## FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* COMMONWEALTH OF PENNSYLVANIA.

### ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 114.   Argued January 6, 1916.—Decided February 21, 1916.

A State may, not directly and materially hinder the exercise of the constitutional powers of the United States by demanding, in opposition to the will of Congress, that a Federal instrumentality pay a tax for performing its functions.

Mere contracts, however, between it and the United States do not render a private corporation an essential governmental agency and confer freedom from state control.

The Act of August 13, 1894, c. 282, 28 Stat. 279, allowing certain corporations to be accepted as surety does not endow them with power, or create them instrumentalities of the United States, and relieve them from compliance with the laws of, or payment of the lawful taxes in, the States in which they transact their business.

The statute of Pennsylvania of June 28, 1895, imposing taxes on premiums collected by certain classes of insurance companies, is not, as applied to premiums on bonds of United States government officials given by surety companies complying with the act of 1894, unconstitutional as an interference with the powers of the Federal Government by taxing an instrumentality thereof.

244 Pa. St. 67, affirmed.

THE facts, which involve the right of a State to tax a foreign corporation doing business within the State on premiums received for bonds of surety required of its officers and others by the United States, are stated in the opinion.

*Mr. Charles Markell, Jr.,* with whom *Mr. Charles F. Patterson* was on the brief, for plaintiff in error.

*Mr. William M. Hargest,* with whom *Mr. Francis Shunk Brown,* Attorney General of the State of Pennsylvania, was on the brief, for defendant in error.

Mr. Justice McReynolds delivered the opinion of the court.

We are asked to reverse a judgment of the Supreme Court of Pennsylvania which denied plaintiff in error's claim that in becoming surety upon bonds required by the United States it acted as a Federal instrumentality and was not subject to taxation on the premiums received. 244 Pa. St. 67.

Incorporated under the laws of Maryland, the Fidelity & Deposit Company is empowered by its charter to act as surety. It was duly licensed to transact business in Pennsylvania. In pursuance of the Act of Congress referred to below, the Attorney General granted it authority to enter into obligations required by laws of the United States.

Contracting within Pennsylvania, the company became surety, during 1909, on bonds in the following matters: "Internal Revenue, customs, United States government officials, United States government contracts and banks for United States deposits, bonds given in Courts of the United States in litigation there pending." Gross premiums thereon amounting to $17,646.86 were collected. Within the same period it also became party to other bonds and received therefor $198,199.19. The State demanded two per centum of such total receipts, basing its claim on the proviso in § 1, Act of Assembly, June 28, 1895, P. L. 408, which declares: "That hereafter the annual tax upon premiums of insurance companies of other States or foreign governments shall be at the rate of two per centum upon the gross premiums of every character and description received from business done within this Commonwealth within the entire calendar year preceding." The amount demanded because of premiums on bonds not authorized or required by the United States, was paid; but liability for $352.92 assessed in respect of those so authorized,

was denied, and to enforce it the present suit was instituted in the Common Pleas Court, Dauphin County.

The Act of Congress entitled "An Act Relative to recognizances, stipulations, bonds, and undertakings, and to allow certain corporations to be accepted as surety thereon," approved August 13, 1894 (c. 282, 28 Stat. 279), provided:

SEC. 1. "That whenever any recognizance, stipulation, bond or undertaking conditioned for the faithful performance of any duty, or for doing or refraining from doing anything in such recognizance, stipulation, bond, or undertaking specified, is by the laws of the United States required or permitted to be given with one surety or with two or more sureties, the execution of the same or the guaranteeing of the performance of the condition thereof shall be sufficient when executed or guaranteed solely by a corporation incorporated under the laws of the United States, or of any State having power to guarantee the fidelity of persons holding positions of public or private trust, and to execute and guarantee bonds and undertakings in judicial proceedings: *Provided*, That such recognizance, stipulation, bond, or undertaking be approved by the head of department, court, judge, officer, board, or body executive, legislative, or judicial required to approve or accept the same. But no officer or person having the approval of any bond shall exact that it shall be furnished by a guarantee company or by any particular guarantee company."

SEC. 2, that "no such company shall do business under the provisions of this Act beyond the limits of the State or Territory under whose laws it was incorporated and in which its principal office is located . . . until it shall by a written power of attorney appoint some person residing within the jurisdiction of the court for the judicial district wherein such suretyship is to be undertaken, . . . as its agent, upon whom may be served

all lawful process against such company, . . ," Sec-
tion 3, that every company before transacting business
under the Act shall deposit with the Attorney General of
the United States a copy of its charter and a statement
showing assets and liabilities, and "if the said Attorney
General shall be satisfied that such company has authority
under its charter to do the business provided for in this
Act, and that it has a paid up capital of not less than
$250,000 in cash or its equivalent, and is able to keep and
perform its contracts, he shall grant authority in writing
to such company to do business under this Act." Sec-
tion 4, that quarterly statements shall be filed with the
Attorney General, who shall have power to revoke the
authority of any company "whenever in his judgment
such company is not solvent or is conducting its business
in violation of this Act." Section 5, that "any surety
company doing business under the provisions of this Act
may be sued in respect thereof in any court of the United
States" which has jurisdiction, in the district in which
the instrument was made or guaranteed or the principal
office of the company is located. Section 6, that "all
right to do business under this Act" shall be forfeited upon
failure to pay a final judgment against it. Section 7,
that a company having executed any instrument under
the act shall be estopped to deny its corporate power to
execute same. Section 8, that penalties therein pre-
scribed for failure to comply with the provisions of the Act
shall be recovered by suit.

The Court of Common Pleas held the tax "is a charge
for the privilege of transacting business in the State,
measured by the amount of the business done;" there is
"nothing in the Act of Congress to support the proposition
that the defendant was authorized by it to transact its
business in the State of Pennsylvania;" and in executing
the specified bonds the surety company "was in no sense
an instrumentality of Government." Judgment was ac-

cordingly rendered for the State; and, on appeal, this was affirmed upon findings and opinion below.

In behalf of plaintiff in error, counsel maintain that the taxing power of the State has been so exercised as to collide with operations of the Federal Government; that under the Act of Congress the surety company became a Federal instrumentality with power to execute bonds within the State and consequently could not be subjected to a privilege tax therefor.

That the challenged tax "is an exaction for the privilege of doing business," seems plain (*Equitable Life Ass. Soc. v. Pennsylvania,* 238 U. S. 143); and undoubtedly a State may not directly and materially hinder exercise of constitutional powers of the United States by demanding in opposition to the will of Congress that a Federal instrumentality pay a tax for the privilege of performing its functions. *Farmers' Bank v. Minnesota,* 232 U. S. 516; *Choctaw & Gulf R. R. v. Harrison,* 235 U. S. 292. But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control. *Baltimore Ship Building Co. v. Baltimore,* 195 U. S. 375. Moreover, whatever may be their status, if the pertinent statute discloses the intention of Congress that such corporations contracting under it with the Federal Government shall not be exempt from state regulation and taxation, they must submit thereto. *National Bank v. Commonwealth,* 9 Wall. 353, 362; *Van Allen v. Assessors,* 3 Wall. 573, 585; Cooley on Taxation, 3d ed., pp. 130, 131.

As revealed by its title, the purpose of the Act of 1894 is "to allow certain corporations to be accepted as surety, etc." It does not undertake to endow any corporation with power, but only to permit those complying with specified conditions to exercise their lawful powers, derived from other sources, by contracting with the Govern-

ment under official approval. "Power to guarantee,"
required by § 1, is not the same thing as "authority under
its charter," referred to in § 3; and we think the clear
intent was that existence of the former should be deter-
mined by the laws in force at place of contract. Neither
circumstances nor language of the act indicate design or
necessity to limit application by the several States of a
well-established system of licensing and taxing bonding
companies not incorporated under their own statutes.
Plaintiff in error's right to carry on business in Pennsyl-
vania depended upon compliance with its laws.

We find no error in the judgment of the court below and
it is

*Affirmed.*