### MORAN v. LUCAS, Commissioner of Internal Revenue.

### SHEA v. SAME.

Court of Appeals of District of Columbia.
Submitted November 13, 1929.
Decided December 2, 1929.

Nos. 4907, 4908.

George P. Hoover and Laurence Graves, both of Washington, D. C., for appellants.

Mabel W. Willebrandt, Asst. Atty. Gen., C. M. Charest, C. Colden Miller, J. Louis Monarch, and Harvey R. Gamble, all of Washington, D. C., and Morton P. Fisher, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The decision herein appealed from is reported in 11 B. T. A., 557.

These appeals involve certain income tax deficiencies for the year 1919. The cases are identical in character.

On March 18, 1919, a contract was executed, and afterwards carried into effect, whereby the American Security & Trust Company, a District of Columbia corporation, acquired the assets and outstanding capital stock of the Home Savings Bank, Incorporated, and assumed all obligations of the bank other than its liability to stockholders. The stockholders of the Home Savings Bank received $400 per share for their stock, together with the right to buy four shares of the capital stock of the American Security & Trust Company at the price of $100 a share, for each share of stock in the Home Savings Bank transferred by them under the contract.

It appears by competent and convincing evidence that at the time of this transaction the stock of the American Security & Trust Company possessed a fair market value of $220 a share. In practical effect therefore the owner of a share of stock in the Home Savings Bank received $400 in cash for each share of stock transferred by him, and became entitled to convert the $400 thus received into four shares of the stock of the American Security & Trust Company, having at the time an aggregate fair market value of $880. The modus operandi thus pursued was induced by certain restrictions prescribed by the laws relating to corporations in the District of Columbia. However, it was manifestly contemplated by the contract that the vendor of each share of stock would avail himself of the right to secure, in payment thereof, the stipulated shares of stock in the other corporation having a value of $880, instead of resting satisfied with $400 in cash.

At the time of this transaction the appellant Moran was the owner of 10 shares of the capital stock of the Home Savings Bank, and the appellant Shea was at the same time the owner of 29 shares of similar stock, all of which were transferred under the contract. In their income tax returns for the year 1919 the appellants computed the price received for their stock as only $400 a share, and ignored the value represented by the right to buy four shares of stock of the American Security & Trust Company at a price $120 a share less than the fair market value thereof at the time.

Upon consideration of the returns the Commissioner held that the transaction in question was an exchange of stock, and determined a deficiency in respect to the return. The issue was then appealed to the Board of Tax Appeals. The Board held that the disposition of stock by the appellants under the circumstances constituted a sale thereof under the provisions of section 202 (a) of the Revenue Act of 1918 (40 Stat. 1060), and that in computing the price received for their stock the appellants should have included therein the fair market value of the right to subscribe for the stock of the American Security & Trust Company, which was granted to them by the contract. The Board held that, under the circumstances, the fair market value of that right was $120 a share, and therefore that the price received by appellants for each share of stock sold by them was $400, plus $480 as the value of the subscription right, making a total actual price of $880 per share. The Board entered a redetermination accordingly, and this appeal was taken therefrom.

Appellants contend that the subscription right was not transferable, and therefore had no market value. We do not agree with this view, for it does not appear that the right, when matured, was not transferable, and in any event it was a property right which permitted the holder of each share of stock to buy for $100 a security having a present market value of $220. It may be noted that the appellants in fact availed themselves of this right, and that it was a substantial part of the consideration which induced them to part with their original holdings.

It is argued by appellants that the subscription right amounts to no more than a stock dividend and is not taxable as a gain, under the principle announced in Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 159, 62

L. Ed. 372, L. R. A. 1918D, 254. This view is not tenable. In that case the Supreme Court held that a stock dividend, representing merely surplus profits transferred to the capital account of the corporation, was not taxable as income. The court said: "A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased." In the present case however the appellants received, as part consideration for the sale of their stock in one corporation, a profitable right to buy stock in a different corporation. This right certainly added "to the interests of the stockholders." The present case comes within the rule announced in Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152; United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906; and Marr v. United States, 268 U. S. 536, 539, 45 S. Ct. 575, 69 L. Ed. 1079.

The appellants contend that the subscription right cannot represent any taxable income until a sale is made of the stock purchased under its terms. It is argued that, until a sale is made, the value of the stock thus secured cannot be definitely ascertained, nor determination made of the loss or profit resulting therefrom. We think, however, that the question is one of present value, and the price realized on actual sales made in the usual and customary manner is admissible to fix such value. See Appeals of B. F. Saul et al., 4 B. T. A. 639, involving the same transaction as this, but with other stockholders as parties.

The decision appealed from is accordingly affirmed, with costs.