**HELVERING, Commissioner of Internal Revenue, v. CLAIBORNE–ANNAPOLIS FERRY CO. OF ANNAPOLIS, MD.**

No. 4210.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and

Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Ridgely P. Melvin, of Annapolis, Md., and A. Harding Paul, of Washington, D. C., for respondent.

Before PARKER and SOPER, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. The respondent taxpayer is a private corporation engaged in operating a ferry across the Chesapeake Bay between Annapolis on the Western shore and Claiborne and Metapeake on the Eastern shore. The distance across the bay at this point is 23 miles and taxpayer received from the state of Maryland for the maintenance of the ferry during the year 1931 the sum of $23,000, or $1,000 per mile, which was paid in monthly installments. Taxpayer's net income for the year 1931, exclusive of the amount paid it by the state, was $93,118.29, and was earned for the most part in the transportation of automobiles, passengers, and trucks. The amount received from the state was used for the operation of the ferry and was not segregated from other income. The Board held that this amount "was not income within the meaning of the Sixteenth Amendment, but was a contribution to capital by the state to encourage, promote and maintain a ferry service in the public interest, and, as such, was not properly includable in petitioner's gross income for tax purposes." Two questions are presented for our consideration: (1) Whether the $23,000 received from the state was income or was contribution to capital, and (2) whether, if income, it was exempt from taxation because a contribution by the state towards the maintenance of the public ferry.

On the first question, we think that the amount received by taxpayer from the state was clearly income as distinguished from contribution to capital. It was paid to the taxpayer by the state in consideration of the maintenance of the ferry and was as truly earned by the operation of that enterprise as were the tolls collected from vehicles and passengers. It was used like other income for operating expenses and the accumulation of a fund from which dividends should be paid; and no part of it, so far as the record shows, went into the invested capital of the enterprise. " 'Income,' says the Supreme Court, 'may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. Certainly, the amount received from the state for the maintenance of the ferry was gain to the taxpayer; and it was gain derived from the capital invested in the ferry and the labor involved in its operation.

The amount received by taxpayer from the state was in no sense a gift, which is a transfer without consideration. Noel v. Parrott, 4 Cir., 15 F.2d 669; Bogardus v. Commissioner, 58 S.Ct. 61, 82 L.Ed. ——. It was made in consideration of the maintenance of the ferry service; it was paid monthly; and its payment would not have been continued from month to month if the service had not been maintained. "Bounties granted by a government are never pure donations, but are allowed either in consideration of services rendered or to be rendered, objects of public interest to be obtained, production or manufacture to be stimulated, or moral obligations to be recognized." Allen v. Smith, 173 U.S. 389, 402, 19 S.Ct. 446, 451, 43 L.Ed. 741.

And it is equally clear that the amount paid by the state was not intended by anyone as a contribution towards or an addition to the capital investment of the taxpayer. Taxpayer's capital was invested in wharves and ferryboats; and the payment by the state was intended, not to reimburse taxpayer for expenditures it had made in their purchase or equipment, but to compensate it in part for their operation. As stated above, it was treated in all respects like other income and was available for operating expenses or for the payment of dividends. The case of Edwards v. Cuba Railroad Co., 268 U.S. 628, 45 S.Ct. 614, 615, 69 L.Ed. 1124, upon which taxpayer chiefly relies, is readily distinguishable. In that case the subsidy payments made by the Cuban government were used to reimburse taxpayer for capital expenditures. The court said: "Relying on the contract for partial reimbursement, plaintiff found the money necessary to construct the railroad. The subsidy payments were proportionate to mileage completed; and this indicates a purpose to reimburse plaintiff for capital expenditures. All—the physical properties and the money subsidies —were given for the same purposes. It cannot reasonably be held that one was contribution to capital assets, and that the other

was profit, gain or income. Neither the laws nor the contracts indicate that the money subsidies were to be used for the payment of dividends, interest or anything else properly chargeable to or payable out of earnings or income. The subsidy payments taxed were not made for services rendered or to be rendered." The subsidy paid taxpayer by the state of Maryland was more nearly analogous to the case of "additional compensation" awarded the railroads by the government during the period of federal control, which has been held properly taxable as income of the railroads. Southern Ry. Co. v. Commissioner, 4 Cir., 74 F.2d 887, 893, and cases there cited. Such "additional compensation" was distinguished in those cases from the allowance made the railroads for undermaintenance, which, like the subsidy in the Cuba Railroad Case, was treated as a restoration of capital and not taxable as income.

██ On the second question, there can be no question but that the operation of a public ferry as a link in the state highway system is a proper function of the state and that the proceeds of such operation by the state itself would not be subject to the federal income tax (Jamestown & Newport Ferry Co. v. Commissioner, 1 Cir., 41 F.2d 920); but it by no means follows that the income of a private corporation engaged in operating such a ferry would not be subject to such tax. Cf. Susquehanna Power Co. v. State Tax Commission of Maryland, 283 U.S. 291, 293, 51 S.Ct. 434, 435, 75 L.Ed. 1042; Broad River Power Co. v. Query, 288 U.S. 178, 181, 53 S.Ct. 326, 327, 77 L.Ed. 685; South Carolina Power Co. v. South Carolina Tax Commission, D. C., 52 F.2d 515, 526. Nor is the payment made by the state to a private corporation necessarily exempt from such tax because made as compensation or part compensation for a service which the state itself might have performed. Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 174, 70 L.Ed. 384; Underwood v. Commissioner, 4 Cir., 56 F.2d 67.

██ The taxpayer here was a private corporation engaged in the operation of a public ferry. The greater part of its income was derived from tolls collected from vehicles and passengers transported. The subsidy paid by the state increased its annual income in the same manner as its income would have been increased by a contract entered into with the state for the performance of any other public service; and the

tax was imposed without discrimination as to whether its income was derived from charges made to private individuals or from the state subsidy. Such tax cannot be said, in the light of the facts to which we have adverted, to impair in any substantial manner taxpayer's ability to discharge its obligations to the state or the state's ability to procure the services of private individuals to aid in the undertaking. The case clearly falls, therefore, within the rule laid down in Metcalf & Eddy v. Mitchell, supra, in which the question involved was the taxability of that portion of the income of consulting engineers derived from contracts with states or municipalities. The Supreme Court in that case laid down the principle here applicable as follows: "Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. * * * When, however, the question is approached from the other end of the scale, it is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule. Thomson v. Union Pacific Railroad Co., 9 Wall. 579, 19 L.Ed. 792; Union Pacific Railroad Co. v. Peniston, 18 Wall. 5, 21 L.Ed. 787; Baltimore Shipbuilding & Dry Dock Co. v. Baltimore, 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242; Gromer v. Standard Dredging Co., 224 U.S. 362, 371, 32 S.Ct. 499, 56 L.Ed. 801; Fidelity & Deposit Co. v. Pennsylvania, 240 U.S. 319, 36 S.Ct. 298, 60 L.Ed. 664; Choctaw, O. & G. R. Co. v. Mackey, 256 U.S. 531, 41 S. Ct. 582, 65 L.Ed. 1076. As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the ter-

878

ritorial limits of the states; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. McCulloch v. Maryland [4 Wheat. 316, 4 L.Ed. 579], supra; Collector v. Day [11 Wall. 113, 20 L.Ed. 122], supra; Dobbins v. Commissioners of Erie County [16 Pet. 435, 10 L. Ed. 1022], supra. * * * But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way."

See, also, James v. Dravo Contracting Co., 58 S.Ct. 208, 82 L.Ed. ——, decided December 6, 1937; Alward v. Johnson, 282 U. S. 509, 514, 51 S.Ct. 273, 75 L.Ed. 496, 75 A. L.R. 9; Fidelity & Deposit Co. v. Pennsylvania, 240 U.S. 319, 36 S.Ct. 298, 60 L.Ed. 664.

The tax here is not upon any contract between the state and the taxpayer. It is not upon any specific sum received from the state. It is levied upon the taxpayer's net income "after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses." Peck & Co. v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 434, 62 L.Ed. 1049. We can say of it, as the Supreme Court said of the application of the federal income tax to income derived from oil lands leased by a state, "The remote and indirect effects upon the one government of such a nondiscriminatory tax by the other have never been considered adequate grounds for thus aiding the one at the expense of the taxing power of the other." Group No. 1 Oil Corp. v. Bass, 283 U.S. 279, 51 S.Ct. 432, 433, 75 L.Ed. 1032. See, also, Indian Territory Illuminating Oil Co. v. Board of Equalization, 288 U.S. 325, 53 S.Ct. 388, 77 L.Ed. 812; Willcuts v. Bunn, 282 U.S. 216, 226, 51 S.Ct. 125, 127, 75 L.Ed. 304, 71 A.L.R. 1260; Taber v. Indian Territory Illuminating Oil Co., 300 U.S. 1,

57 S.Ct. 334, 335, 81 L.Ed. 463. In the case last cited the Supreme Court, speaking through Chief Justice Hughes, said: "Our decisions distinguish between a nondiscriminatory tax upon the property of an agent of government and one which imposes a direct burden upon the exertion of governmental powers. In the former case where there is only a remote, if any, influence upon the exercise of governmental functions, we have held that a nondiscriminatory ad valorem tax is valid, although the property is used in the operations of the governmental agency." Certainly, if a nondiscriminatory ad valorem tax on the property used in the operation of a governmental agency is not to be condemned as a direct burden upon the exertion of governmental powers, a nondiscriminatory tax on the net income of a private corporation cannot be so condemned because earned in the operation of such agency. See James v. Dravo Contracting Co., supra, and Citizens Water Co. v. Commissioner, 8 Cir., 87 F.2d 874.

For the reasons stated the decision of the Board of Tax Appeals will be reversed.

Reversed.