Lykes Bros. Steamship Co., Inc. (Formerly Lykes Bros.-Ripley Steamship Co., Inc.), Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 96637.    Promulgated November 29, 1940.

*Robert N. Miller, Esq.*, and *Ward Loveless, Esq.*, for the petitioner. *J. L. Backstrom, Esq.*, for the respondent.

OPINION.

ARUNDELL: The question for decision is whether the respondent erred in including in petitioner's income for 1934 and 1935 the amounts of $100,000 and $150,000, respectively, that were deposited by the petitioner in a special account as described in the findings of fact. The petitioner's views are that the amounts deposited were either parts of a government subsidy useable only for capital purposes, hence not income under *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628, or that they were not received for the petitioner's separate use, benefit, and disposal and so are not income within the definition in *Eisner* v. *Macomber*, 252 U. S. 189. The respondent takes the position that the full amounts paid to the petitioner by the Post Office Department were taxable income, in that they were received by it without restriction and solely as compensation for carrying mail and other services; that no part of the sums received was required to be placed in escrow; and that the amounts placed in escrow were not solely for capital purposes.

At the outset it is to be noted that the petitioner, while contending that the full sums received from the Post Office Department were subsidies, does not contend that such classification of them removes the full sums from the category of taxable income. It does not claim that the doctrine of the *Cuba Railroad Co.* case goes so far as to exempt all of the mail payments, but limits the application of that case to the sums set aside in the special bank account.

There is little room for doubt that the entire sums paid to the petitioner in the taxable years were subsidies in the sense that they were governmental aids or grants designed to encourage the expansion of the American Merchant Marine. The huge sums paid in

excess of normal postal rates were clearly for that purpose. But, applying the broad term of subsidy to the amounts paid to the petitioner does not solve the question in issue here, because of the different purposes for which such governmental grants are made. From the Supreme Court cases a few general rules may be drawn. Govenmental grants made in order to induce construction and operation of railroads are not mere gifts. *Burke* v. *Southern Pacific R. R. Co.*, 234 U. S. 669, 679. Such a grant made to a railroad company proportionate to mileage of railway completed is treated as a reimbursement for capital expenditures and is not income. *Edwards* v. *Cuba Railroad Co.*, *supra*. A grant to a railroad to make up a deficiency in operating income is income for Federal tax purposes. *Texas & Pacific Railway Co.* v. *United States*, 286 U. S. 285.

The real point at issue in this case is whether the payments by the Government, to the extent of the sums set aside by the petitioner, were made for capital purposes within the principle of the *Cuba Railroad Co.* case. This must be determined on the basis of the agreement between the United States and the petitioner. The agreement relating specifically to the payments to be made to the petitioner is that of February 21, 1933, executed by the petitioner and the Postmaster General. The only requirement in that contract calling for any expenditure by the petitioner was that the petitioner should construct or reconstruct vessels at a cost of $20,000,000 within the 10-year period of the contract, subject to reduction in amount by the Postmaster General. The provisions relating to that requirement do not in any way require that any part of the revenues from carrying the mails be set aside or that the cost of construction be paid from such revenues. There is no tie-up in the contract between the mail revenues and the construction to be performed by the petitioner. The revenues were purely on a mileage basis, without any reference to the amount or cost of construction of vessels by the petitioner. Therefore, under this contract it can not be said, as in the *Cuba Railroad Co.* case, that there is any indication of a purpose that the mail revenues were to be in reimbursement to the petitioner for capital expenditures.

The petitioner says that the contracts for the purchase of vessels and for the transportation of ocean mail pay were interdependent, and that it was understood by all parties to both contracts that deposits required under the purchase contract would be made from the ocean mail pay. There is partial interdependence of contracts in that the purchase contract of February 17, 1933, was to become effective only if and when a mail contract with the Postmaster General was executed, and further in that the purchase contract provided

that the deposits were not to be required if the mail contract was terminated or modified without fault of the petitioner, or if Congress did not make a timely appropriation to pay for the mail services to be rendered by the petitioner. These provisions are all in the negative, providing what shall not be done under the named circumstances. There is nothing in them requiring the affirmative act of setting aside any of the ocean mail pay. And so, even finding a partial interdependence of contracts, we are unable to find therein what is essential to the petitioner's case, namely, that the deposits were required by the contract to be made out of the income received under the ocean mail contract. See *Monroe Abstract Corporation,* 41 B. T. A. 5, and cases there cited. It must be remembered that in each of the taxable years the petitioner had revenues from other sources of over $6,000,000, and on the record in the case there is no reason to suppose that the deposits required were intended to be made from postal revenues rather than from the other revenues. Moreover, there is no relation by amounts or percentages between the sums to be deposited and those to be received under the ocean mail contracts; the deposits were to be made without regard to how much or little was realized under the mail contracts.

The chief reliance of the petitioner to show intended appropriation of mail pay to the deposit requirements is the letter of the Postmaster General which is set out in the findings of fact. In that letter article 12 of the sales contract is spoken of as "providing for the placing of a certain amount of mail pay in escrow." If this statement in the letter can be taken to mean that the parties understood that a part of the mail pay was to be set aside, it still does not establish the petitioner's case. A reading of the whole letter shows that it was thought that the setting aside was to be for the purpose of providing security "in lieu of bond on the mail contract." Quite obviously the Postmaster General had no thought that the escrow provision was intended to require an appropriation to capital purposes, and in this view the principle of *Cuba Railroad Co.* does not apply. When, following the Postmaster General's letter, an amendatory agreement was executed by the Shipping Board and the petitioner eliminating that part of the ship purchase contract which required the approval of the Postmaster General for the modification or postponement of deposits, the principal connecting link between the two contracts was broken. Accepting the Postmaster General's construction of the contracts that the deposit arrangement was to secure performance, it would seem that after the amendment of March 20 the deposits were required by the Shipping Board as security for performance of the purchase contract rather than to

assure the making of any capital expenditures. That securing performance was the principal purpose is indicated by the fact that none of the deposits were disbursed for any purpose during the life of the contract.

One of the provisions of the Shipping Board contract is that the petitioner might spend directly for new construction, reconditioning, remodeling, or improvement of vessels any amounts it saw fit, and any sums so spent should reduce the amounts required to be deposited. This seems to us to indicate that the parties did not intend to require a part of the mail payments to be set aside. Under this provision, if the petitioner had expended for any of the several purposes listed, the amount of $100,000 in the first year and $150,000 in the second year, regardless of the source of the funds expended, it would not have been required to deposit any sums with the Whitney bank. This demonstrates that the parties to the contracts did not intend that the deposits were to be required to be made out of the mail payments. Either a deposit from any source, or construction, remodeling, etc., to the extent provided, would leave the entire mail payments free to be used by the petitioner for any purpose, hence income within the rule of *Eisner* v. *Macomber, supra.*

An important fact in this case is that the mail payment income was directly dependent upon operations. If petitioner operated its vessels and carried ocean mails it was to be compensated therefor, based upon mileage and the class of vessel operated. The income was not, as in *Cuba Railroad Co.*, dependent on construction, and, after the Postmaster General's waiver of the deposit provisions in February 1933, it was in no way contingent on the making of deposits. On the facts, then, the case becomes very like that of *Texas & Pacific Railway Co.* v. *United States, supra,* which involved the taxability of sums paid to railroads to make up deficiencies in operating income. The Supreme Court pointed out in that case that the railroads "were bound to operate their properties in order to avail themselves of the government's proffer. Under the terms of the statute, no sum could be received save as a result of operation." Concluding on that point, the Court said:

Clearly, then, the amount paid to bring the yield from operation up to the required minimum was as much income from operation as were the railroad's receipts from fares and charges.

In this case, as in the one quoted, the entire receipts were from the operation of the petitioner's property and equally are income.

*Decision will be entered for the respondent.*