SOUTHERN MARYLAND AGRICULTURAL ASSOCIATION OF PRINCE GEORGE'S COUNTY,

v.

UNITED STATES of America.

No. 6583.

United States District Court, D. Maryland, Civil Division.

Nov. 29, 1954.

Albert R. Crocco, Baltimore, Md., for plaintiff.

George Cochran Doub, U. S. Atty., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., and Homer R. Miller, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendant.

THOMSEN, District Judge.

Defendant Government's motion for summary judgment, under Rule 56(b), Fed.Rules Civ.Proc., 28 U.S.C.A., raises the question whether there is any material difference between (a) the facts in this case, as set out in the complaint, the affidavit in support of plaintiff's opposition to motion for summary judgment and the papers and statements received in evidence at the hearing on said motion, and (b) the facts in the case of U. S. v. Maryland Jockey Club of Baltimore City, 4 Cir., 210 F.2d 367, reversing, D.C., 118 F.Supp. 349, certiorari denied 347 U.S. 1014, 74 S.Ct. 869.

The complaint in the case at bar was filed shortly after the decision of the district court in favor of the Jockey Club, and is essentially the same as the complaint in that case. It seeks to recover the sum of $210,351.89 alleged to have been erroneously paid by plaintiff (Taxpayer) as part of its income taxes for the taxable years 1947, 1948 and 1949. It alleges that Taxpayer, which operated a race track (Bowie) under the supervision of the Maryland Racing Commission, was required under Maryland law, as agent for said Commission, to deduct one-half of one percent from the total wagers made on all races at its track and to pay those monies over to the Racing Commission, which deposited them in a special account known as the "Racing Fund". The complaint refers to Section 11A of Chapter 961 and Chapter 962, Laws of Maryland 1945; Section 11A, Chapter 502, Laws of Maryland 1947, codified as Section 12, Article 78B of the Annotated Code of Maryland,

1947 Supp. The latter statute provided, *inter alia:*

"The amount of the Racing Fund on hand at any time, representing the deductions made by any particular licensee from the mutual pool, previously collected by such licensee, as agent of the Commission, may, with the prior written and express permission of the Commission, upon such terms and conditions as it may prescribe, be expended by that particular licensee for any substantial alterations, additions, changes, improvements, or repairs to or upon the property owned or leased by such licensee, and by it used for the conduct of racing. In determining whether to permit the use of any of the Racing Fund, the Commission shall give due consideration to whether its expenditure in each instance will promote the safety, convenience and comfort of the racing public and of horse owners and, generally, whether it will tend towards the improvement of racing in the State. If the deductions, herein provided for, made by any licensee for any calendar year, as agent of the Commission, shall neither have been spent nor binding commitments have been entered into for their expenditure, with the approval of the Commission, within three (3) years from the last day of the year of collection, the unspent portion of such year's deduction shall revert to the State as part of its general funds, and shall be paid over promptly by the Commission to the Comptroller. *Provided, however,* that due to the present war emergency, such deductions of any licensee for the calendar years 1944, 1945 and 1946 may be expended or binding commitments entered into for its expenditure at any time prior to December 31, 1950."

During the years 1944 to 1949, inclusive, Taxpayer collected and paid to the Maryland Racing Commission, as its agent, pursuant to said statute and other applicable authority, the total sum of $651,641.62. During the calendar years 1946 and 1947 Taxpayer made application to the Commission, pursuant to those statutory provisions, for permission to make certain capital additions, improvements and alterations to the plant and equipment of its race course and to be reimbursed for the costs thereof by the Commission from the aforesaid Racing Fund. The Commission approved certain of the items and, when the same were completed or acquired, the Commission paid to Taxpayer out of the Racing Fund sums totalling $167,951.48 during the taxable year 1947. Similar payments in the amount of $202,809.96 were made in the taxable year 1948, and in the amount of $180,427.76 in the taxable year 1949. Those items were included in Taxpayer's United States Corporate Income Tax Returns for the taxable years 1947, 1948 and 1949, respectively. The Commissioner of Internal Revenue denied Taxpayer's applications for refund, which were based on the allegedly erroneous inclusion of those items. The question in this case, therefore, is whether those sums so received by Taxpayer constitute income taxable to it during the respective taxable years in which Taxpayer received the monies out of the Racing Fund.

The similar question in the Maryland Jockey Club case [210 F.2d 370] was answered in the affirmative by the Court of Appeals for the Fourth Circuit. That Court held:

"* * * the sum involved was received by taxpayer through the operations of its pari-mutuel betting at its race track. It was allowed to collect the sum, but was required to deposit it in a State Racing Fund to be held for a three year period during which the State could not acquire absolute title, use or enjoyment of the fund. If the fund was needed for permanent capital improvements it could, with the permission of the Racing Commission, be drawn upon by taxpayer. If not drawn within three years it became the property of

the State. Until that time the State never acquired absolute title to the Racing Fund involved. It was a fund created and set aside for use of the taxpayer if the need arose, and could not be used by the Racing Commission for any other purpose. The Racing Commission did not collect the sums as a tax. It was not a taxing agency but a regulatory body. Thus, where the fund never vested absolutely in the State as is clearly the fact here, it was never the State's fund for subsidies but represented the taxpayer's own receipts from its own operations, of which it was temporarily deprived of enjoyment but as to which it later realized enjoyment to the extent that the fund was utilized. No track could withdraw from the Fund more than it paid in; no track could use the money paid into the Fund by another track."

After the original district court judgment in favor of the Jockey Club was reversed on appeal, Taxpayer in the instant case filed suit in the United States Court of Claims based upon the same cause of action set out in this case; and when certiorari in the Jockey Club case was refused by the Supreme Court, Taxpayer moved for leave to dismiss the instant case without prejudice, so that it could proceed with its case in the Court of Claims. That motion was denied. D.C., 16 F.R.D. 100.

In support of that motion, Howard S. Pierce, Taxpayer's Vice President, made an affidavit, stating:

"That in another action brought by the Maryland Jockey Club of Baltimore City in this Court, based on allegations similar to those contained in the Plaintiff's complaint in the instant case, a judgment of the Circuit Court of Appeals for the 4th Circuit reversing the judgment of this Court would appear to establish the law applicable to the instant case in this Court and, therefore, it would appear that no good purpose would be served by the Plaintiff con-

tinuing the instant action to trial and judgment. Under the circumstances, the Plaintiff prays for an order directing that the instant action be discontinued without prejudice and without costs as to either party against the other and for such other and further releases as may be just."

However, in opposition to the Government's motion for summary judgment, Taxpayer has filed another affidavit by Mr. Pierce, and a memorandum, contending that there are material facts in the instant case which are not identical with the facts stipulated or found in the Jockey Club case.

At the hearing on the motion for summary judgment, it was agreed to make part of the record certain correspondence between Taxpayer and the Maryland Racing Commission, three opinions and orders of Judge Manley in the case of Hyman A. Pressman v. Maryland Jockey Club of Baltimore City, which was filed in 1952 and finally decided on June 3, 1953, and certain statements by counsel for Taxpayer and counsel for the Government about the circumstances leading to the passage of Chapter 422, Laws of Maryland 1953, amending Article 78B, § 12 of the Annotated Code of Maryland.

Taxpayer's principal contention is that the question whether the Racing Fund vested absolutely in the State is a question of fact, and that in the case at bar the fact is that it did so vest in the State as soon as it was collected and paid over to the Racing Commission by Taxpayer. It is evident, however, that the answer to the question whether, and if so when, the Racing Fund vested absolutely in the State, is a conclusion to be drawn by applying controlling legal principles to the basic facts of the case. The controlling legal principles are the same in this case as in the Jockey Club case. And I find that the basic facts are essentially the same, except for dates, amounts, and other matters not material to the decision of the point at issue.

■ Most of the "facts" in the case at bar which Taxpayer contends are materially different from those in the Jockey Club case are not facts at all, within the meaning of Rule 56(b), Fed.Rules Civ. Proc., but either (a) statutes or other matters of which a court is required to take judicial notice, or (b) conclusions from basic facts which are the same in both cases, but to which conclusions Taxpayer gives different labels from those given in the Jockey Club case.

Taxpayer cites the amendments to Section 12 of Article 78B of the Maryland Code, passed in 1951 and 1953 respectively,[1] in support of its contention that the Racing Fund was owned by the State and that the payments therefrom were subsidies or contributions to capital. Taxpayer contends that those statutes were not considered by the Court of Appeals for the Fourth Circuit in the Jockey Club case.

■ It is true that the opinion of the Court of Appeals in that case did not discuss those amendments, no doubt because the judges did not find them applicable. But there is no basis for Taxpayer's contention that those statutes were not brought to the attention of the Court of Appeals. It appears without contradiction in the record in the instant case that those amendments were discussed during the oral argument on appeal in the Jockey Club case, and that the competent and experienced tax counsel representing the Jockey Club said that he did not think they applied to the year in question in that case (1948). Judge Dobie cited Sec. 12, Article 78B of the Annotated Code of Maryland 1951, which codified the amendment of 1951. The 1951 amendment was referred to in the brief of the Government in opposition to certiorari in the Jockey Club case, where the Government contended

---

1. Chapter 706, Laws of Maryland 1951, codified as Sec. 12 of Article 78B of the Annotated Code of Maryland 1951, which amended Sec. 11A of Article 78B as enacted by Chapter 502, Laws of Maryland, 1947, supra (codified as Sec. 12 in the 1947 Supplement to the Code); Chapter 422, Laws of Maryland 1953, adding a new subsection 12(e) to said Article. Subsection 12(a) of the 1951 amendment, as codified, referred to payments into the Racing Fund during and after 1947 as "a tax", but Subsection 12 (c), dealing with payments out of the fund, was prospective in its language. The Acts of 1945 and 1947, which controlled the payments into and out of the Racing Fund during the years in question in this case (1947–8–9) did not call the payments into the fund "a tax" nor refer to "grants" or "contributions to capital", but permitted each licensee to "expend" its share of the Racing Fund, with the permission of the Commission.

The amendment of 1953 recited confusion as to the legislative intent relative to the creation and operation of the Racing Fund, as established by Chapter 961 of the Acts of 1945, recited that it was the sense of the General Assembly that the real legislative intent in the passage of that Act, as amended from time to time, was to empower the Racing Commission to make, or bind itself to make, commit-

ments or grants to licensees, within three years from the last day of the years of collection, for the purposes provided in Sec. 12, in such manner and upon such terms and conditions as it might prescribe, approved any such grants as contributions to capital theretofore made by the Racing Commission, and authorized certain future action. The occasion of this Act was the action of the Racing Commission in paying to certain of the tracks during the year 1950 their respective shares of the Racing Fund, upon (1) the "binding commitment" of the respective tracks to spend that money later for certain purposes contemplated by the law, and (2) the giving to the Racing Commission of a surety bond guaranteeing such performance. One of those payments had been approved by the Attorney General of Maryland, 35 Op.Atty. Gen. 263, but had been seriously questioned by Judge Manley in the Circuit Court of Baltimore City in the case of Hyman A. Pressman v. The Maryland Jockey Club of Baltimore City, Daily Record, Baltimore, October 10, 1952. See also subsequent unreported memorandum in that case dated January 19, 1953, and memorandum opinion dated June 3, 1953, the latter of which was filed after the 1953 amendment above referred to had become law.

that even if the sums had been collected by the State as a tax under the provisions of the 1951 amendment but had later been refunded to the Taxpayer, they would have constituted income in the year received under the so-called tax benefit rule, citing Sec. 22(b) (12), Internal Revenue Code, as added by Sec. 116 of the Revenue Act of 1942, c. 619, 56 Stat. 798, 26 U.S.C.A. § 22(b) (12), Union Trust Co. of Indianapolis v. Commissioner of Internal Revenue, 7 Cir., 111 F.2d 60, certiorari denied, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421, and Electric Storage Battery Co. v. Rothensies, 3 Cir., 152 F.2d 521, affirmed on this point but reversed on other grounds, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296, as well as Sec. 12, Article 78B of the Annotated Code of Maryland, as amended, 1951, supra. I must assume that the Court of Appeals for the Fourth Circuit took judicial notice of those statutes in the Jockey Club case, as I am required to do in this case.

Taxpayer contends that the facts with respect to control are different in the instant case from those in the Jockey Club case, because of the correspondence with respect to approval of expenditures which was offered in evidence as Plaintiff's Exhibit No. 1 at the hearing on the motion for summary judgment in the instant case. But that correspondence shows clearly that, in the approval and disapproval of the various items submitted, the Racing Commission was following and interpreting the provisions of the relevant statute. Certain items were disallowed because they did not meet the tests set out in the statute. Those letters show no greater control over the funds by the Racing Commission than the court was bound to assume in the Jockey Club case from the mere reading of the statute. The history of the legislation and the responsibility of the Racing Commission in connection with the funds are discussed in 35 Opinions of the Attorney General 257, cited in the opinion of the District Judge in the Jockey Club case, and printed in the Government's

brief filed with the Court of Appeals in that case.

Taxpayer argues that the State has the power to change the conditions under which racing is permitted, and to modify the provisions of the statute dealing with the Racing Fund. This was evident to the court in the Jockey Club case from the various amendments to Article 78B specifically called to its attention, and from the general laws of the State of Maryland, of which the court was required to take, and obviously did take, judicial notice.

Counsel for Taxpayer in his oral argument made much of the alleged "fact" that Taxpayer had collected the one half of one percent and paid it into the Racing Fund as *agent* of the Racing Commission. That "fact" cannot differentiate this case from the Jockey Club case. Sec. 11A of the Act of 1947, Article 78B, Sec. 12 of the Code, 1947 Supp., above referred to, provided that "each licensee shall, as agent of the Racing Commission, deduct one-half of one per centum of the total amount of money wagered * * * and remit such deduction to the Commission." That "fact" was alleged in the Jockey Club's complaint and included in the stipulation in that case.

The possession of the money in each case was the same. It was deposited in banks in the name of the Racing Commission. The money was at all times explicitly earmarked and escrowed in a special account. In neither case was the Racing Fund part of the General Funds of the State. All of the factors enumerated in the summary at the conclusion of the opinion of the Court of Appeals in the Jockey Club case, 210 F.2d at page 371, are present in the case at bar.

I find that there is no genuine issue as to any material fact in this case and that the defendant Government is entitled to a judgment as a matter of law.

I intimate no opinion with respect to the possible effect of the amendments passed in 1951 and 1953 to Article 78B of the Annotated Code of Maryland on in-

come taxes for years ending after those amendments became effective.

Let judgment be entered for the defendant, dismissing the complaint, with costs.